**Neola NEEBUHR, Executrix under the Will of Sheldon L. Neebuhr, deceased, Plaintiff,**

v.

**Hon. Frank BAYER, Judge et al., Defendants.**

**Civ. A. No. C80–1432A.**

United States District Court, N. D. Ohio, E. D.

Nov. 25, 1980.

Donald C. Steiner, Canton, Ohio, for plaintiff.

William E. Schultz, Asst. Pros. Atty., Akron, Ohio, for defendants.

## ORDER

CONTIE, District Judge.

This matter is before the Court upon cross motions to dismiss and for summary judgment. Invoking the Court's jurisdiction under 28 U.S.C. § 1343(3) and its statutory counterpart 42 U.S.C. § 1983, plaintiff brings the within action for declaratory and injunctive relief.

### I.

#### Factual Posture

Prior to his death, plaintiff's decedent filed an action in state court seeking damages on a common law tort claim. Plaintiff is the duly appointed executrix of decedent's estate. Plaintiff's decedent died on

January 19, 1980. On March 25, 1980, a motion for substitution of parties was filed in the state court action pursuant to Ohio Civil Rule 25, which provides in relevant part as follows:

RULE 25. Substitution of parties

(A) Death.

(1) If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 through Rule 4.6 for the service of summons. Unless the motion for substitution is made not later than ninety days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

The motion for substitution of parties was not ruled upon. Instead, on July 19, 1980, the trial court dismissed the action on the grounds that a suggestion of death was not filed by the attorney of record within fourteen days after he acquired actual knowledge of decedent's death, as required under Ohio Civil Rule 25:

(E) Suggestion of death or incompetency. Upon the death or incompetency of a party it shall be the duty of the attorney of record for that party to suggest such fact upon the record within fourteen days after he acquires actual knowledge of the death or incompetency of that party. The suggestion of death or incompetency shall be served on all other parties as provided in Rule 5.

On August 14, 1980, plaintiff filed a notice of appeal from the trial court's dismissal. The single issue raised in the state appellate court is whether Ohio Civil Rule 25(E) violates the fourteenth amendment of the United States Constitution. No decision has thus far been rendered by the state appellate court.

Subsequent to the dismissal of the action in state court, plaintiff commenced the within declaratory action seeking injunctive relief. On August 11, 1980, plaintiff filed a complaint in federal court similarly challenging the validity of Ohio Civil Rule 25(E) as violative of the fourteenth amendment. Plaintiff seeks a declaratory judgment and injunctive relief reinstating the state court action. In support of her claim that Ohio Civil Rule 25(E) is unconstitutional, plaintiff propounds the same four arguments that she has presented to the state appellate court:

(1) It denies equal protection because a litigant who has an attorney of record is treated differently than one who represents himself—only in the former instance would a failure to comply with the rule result in a loss of the claim to the estate;

(2) It denies due process because a party's death terminates, in fact and under Ohio law, his attorney's agency to act for him;

(3) It denies due process to the party's next of kin or legatees who are not represented in the action and have no opportunity to protect their interests;

(4) It denies due process because the two-week period specified for the "suggestion" is unreasonably short.

Defendants move to dismiss the complaint, arguing that under the federal doctrine of abstention this Court should relinquish jurisdiction over the instant case. Without support beyond the complaint and an affidavit attesting to the facts as alleged in the complaint, plaintiff moves for summary judgment.

## II.

### *Defendant's Motion to Dismiss*

Defendants portray the pending state court proceedings as involving an issue of state law: the interpretation of Ohio Civil Rule 25(E). Moreover, defendant submits that the interpretation of Ohio Civil Rule 25(E) is an unsettled question of state law.

Arguing that the rule may ultimately be interpreted in such a fashion that will moot plaintiff's constitutional claim, defendants move that this Court abstain from exercising federal jurisdiction and dismiss the within action.

## A.

### The Variegated Abstention Doctrine

■ Under the general rubric of the abstention doctrine, the posture of a case involving a claim otherwise cognizable in federal court may require a postponement or even a complete relinquishment of federal jurisdiction. The reasons supporting abstention are as varied as the contexts in which the doctrine has been invoked. Some of the more commonly expressed rationales underlying the abstention doctrine may be generally categorized as follows: equity, comity, and federalism.

Traditional principles of equity jurisprudence restrain a court from interfering with a collateral criminal proceeding. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (hereinafter *Younger*). The notion of comity counsels against passing upon difficult questions of state law at the cost of disrupting the administration of important state policies. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (hereinafter *Thibodaux*). Concerns of federalism militate strongly in favor of avoiding the needless imposition of federal constitutional law in a dispute that may be rendered moot by a state court interpretation of a perplexing but relevant issue of state law. *See Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (hereinafter *Pullman*).

Cutting across the considerations supporting the abstention doctrine is the obligation of the federal courts to adjudicate the dispute properly before it. *See Allegheny County v. Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1959). The singular fact that there is an action pending in state court is no bar to properly invoking federal jurisdiction over the same issue. *See Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964); *McClellan v. Carland*, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910). Although the efficient administration of judicial resources is a most enticing by–product of the abstention doctrine, judicial economy cannot in itself justify an application of the abstention doctrine in any of its forms.

To the contrary, in situations of concurrent state–federal jurisdiction there is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (hereinafter *Colorado River*). It is for this reason that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813, 96 S.Ct. at 1244. *See Hanna v. Toner*, 630 F.2d 442 (6th Cir. 1980). The abstention doctrine forecloses, at least temporarily, the federal courts to claimants asserting valuable and often delicate federal rights. It therefore "must be invoked only in 'special circumstances,' and only upon careful consideration of the facts of each case." *Harris County Com'rs Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1974) (citations omitted) (hereinafter *Harris County*).

## B.

### Three General Categories of Abstention

The contours of the variegated abstention doctrine are fixed by the considerations that justify its application. There are three general classes of cases identified by the Supreme Court in *Colorado River, supra* at 814–17, 96 S.Ct. at 1244–1246, in which the abstention doctrine is appropriately invoked.

*Pullman Abstention*: Often, the validity of a state law or policy is challenged on federal constitutional grounds. There are occasions when the constitutional claim is predicated upon a forecast of an unsettled issue of state law. In order to nurture a harmonious relationship between state and federal government and to avoid premature constitutional adjudication, federal jurisdic-

tion should be deferred until the underlying issue of state law is authoritatively resolved in the state courts.

The issue of state law confronting the federal courts in *Pullman, supra,* involved the validity of an order issued by the Texas Railroad Commission. The order was challenged under both state and federal law. Reaching the federal constitutional claim would first require the federal court to pass upon a complicated and unresolved issue of state regulatory law. Such a determination of state law by a federal court, noted the *Pullman* Court, could amount to no more than a forecast subject to change with a subsequent determination in state court:

> The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus subplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.

312 U.S. at 500, 61 S.Ct. at 645.

In *Harris County* the Supreme Court recited a number of situations where the appropriate application of *Pullman* abstention was at issue:

> Where an action pending in state court that will likely resolve the state–law questions underlying the federal claim, we have regularly ordered abstention. Similarly, when the state–law questions have concerned matters peculiarly within the province of the local courts, we have inclined toward abstention. On the other hand, where the litigation has already been delayed, or where it has seemed unlikely that resolution of the state–law question would significantly affect the federal claim, the Court has held that abstention should be required.
>
> Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law.

420 U.S. 77, 83–84, 95 S.Ct. at 874–875 (citations omitted).

The within action is not a case presenting an unclear, perplexing issue of unresolved state law. Although the constitutionality of a state statute is at issue here, neither this Court nor the state courts have been called upon by plaintiff to interpret Ohio Civil Rule 25(E). This state rule of civil procedure is unambiguous in its prescription that the attorney of record submit a suggestion of the death of his client within fourteen days after he acquires actual knowledge of the death. It's language is unequivocal and the mere fact that the state appellate courts have not commented upon Ohio Civil Rule 25(E) in the ten years since its adoption does not transform its meaning into an unresolved issue of state law.

Under traditional principles of statutory construction, it is unlikely that any state court decision on the operation of Ohio Civil Rule 25(E) would significantly alter the posture of this case. Because this case involves no issue of unresolved state law, there is no danger of premature constitutional adjudication. Thus, the case does not involve a situation appropriate for abstention under the *Pullman* doctrine. "Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971).

*Burford Abstention:* "Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River, supra* at 814, 96 S.Ct. at 1244. In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court upheld a district court's refusal to adjudicate the reasonableness of a state commission's permit to drill oil wells at the cost of the transcending importance of an elaborate state system for maintaining a cohesive policy relative to the management of natural resources. In *Thibodaux, supra,* abstention was held to be appropriate in an eminent domain proceeding

that was removed to federal court on the basis of diversity of citizenship. The case presented a complicated issue of state law, concerning the power of a municipality to affect an expropriation, which was inextricably tied to the state's eminent domain policy.

Under the *Burford* variant of the abstention doctrine, the concern expressed in *Pullman* for avoidance of unnecessary constitutional adjudication is not relevant. *See Colorado River, supra* at 815 n.21, 96 S.Ct. at 1245 n.21. The prime concern under this line of cases is to avoid disturbing state efforts to develop and maintain a cohesive administrative policy. This concern is not present here. The Court is not called upon in this case to dispose of any state claim that touches upon a state administrative policy of transcendent importance.

*Younger Abstention* : "*Younger v. Harris* advanced the proposition that absent extra–ordinary circumstances, a federal court cannot enjoin a pending criminal trial in a state court." *Parker v. Turner*, 626 F.2d 1, 3 (6th Cir. 1980). *Younger* abstention primarily owes its conception to "the traditional reluctance of courts of equity, even within a unitary system, to interfere with a criminal prosecution." *Huffman v. Pursue*, 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1974). Under this variation of the abstention doctrine as initially developed, a claimant is precluded from airing a federal constitutional claim in federal court challenging some aspect of a pending state criminal proceeding where there is an opportunity to pursue the federal claim within the state system.

The progeny of *Younger*, however, has taken this variant of abstention beyond situations involving collateral criminal proceedings. Thus, abstention has been ordered in cases where either the State is a party to a pending state court proceedings that is quasi–criminal in nature, *see Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (child abuse proceedings); *Huffman v. Pursue, supra* (civil nuisance action), or an important state interest is involved in the pending state court proceedings. *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (prejudgment attachment procedures for the collection of taxes).

In *Judice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), *Younger* abstention was extended to a case where the pending state proceeding was a contempt action involving private civil litigants. Reviewing the development of the principles underlying the *Younger* variant of abstention, the Supreme Court held that the dispositive consideration is not whether the pending state proceeding is civil, criminal, or quasi–criminal. Rather, the more vital consideration is whether the State has an important interest in the pending state proceedings. 430 U.S. 334–36, 97 S.Ct. at 1216–1217.

The administration of the State's judicial system is undeniably one such important interest. *Id.* at 335, 97 S.Ct. at 1217. "So long as that system itself affords the opportunity to pursue federal claims within it," the "*Younger* doctrine of nonintervention" requires that the federal courts refrain from intruding into state judicial functions. *Id.* at 334 & 335, 97 S.Ct. at 1216 & 1217. As the Sixth Circuit has recently emphasized, "constitutional violations in state trial settings must be first handled within the state system." *Parker v. Turner, supra* at 10.

*Judice v. Vail* and *Parker v. Turner* presage both a significant expansion of the *Younger* abstention doctrine and a concomitant departure from the forum allocation decision rendered in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which soundly rejected the argument that the civil rights litigant exhaust state judicial remedies prior to prosecuting a section 1983 claim in federal district court. Although defendants' motion to dismiss is incorrectly predicated upon the *Pullman* variant of abstention, a careful consideration of the relevant facts in this case reveals that abstention is appropriate under *Younger* and its progeny.

■ In this case, the pending state proceeding was commenced upon a common

law tort action. Relying upon Ohio Civil Rule 25(E), the trial court judge dismissed the action. Ohio Civil Rule 25(E) was promulgated by the Ohio Supreme Court pursuant to Article IV, Section 5(B), of the Ohio Constitution. The proper application and enforcement of procedural rules governing civil actions is quintessential to the administration of a State's judicial system. *Cf. Judice v. Vail, supra* at 335, 97 S.Ct. at 1217 ("The contempt power lies at the core of the administration of a State's judicial system.").

Plaintiff has availed herself of the opportunity to pursue her federal claims in the state appellate courts. In the instant action plaintiff seeks not only declaratory relief but also injunctive relief reinstating the state court proceeding. Any intervention by the Court in this case into the operation of Ohio Civil Rule 25(E) "not only 'unduly interfere[s] with the legitimate activities of the Stat[e],' but also 'can readily be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.'" *Judice v. Vail, supra* at 336, 97 S.Ct. at 1218 (citations omitted). Because of the important interest that the State of Ohio has in the pending state proceeding, abstention is appropriate in this case and defendant's motion to dismiss shall be granted. Plaintiff must first repair to the state system to assert the constitutional claim arising within the state trial setting.

## III.

*Plaintiff's Motion for Summary Judgment*

The Court having granted defendant's motion to dismiss, plaintiff's motion for summary judgment is moot and shall be denied.

## IV

### Conclusion

Accordingly, the Court hereby grants defendant's motion to dismiss and denies plaintiff's motion for summary judgment.

IT IS SO ORDERED.